FOSTER AND BOUCK, EXECUTORS, &C. *v.* WILBER AND
OLMSTEAD.

When executors or administrators are cited to account before a surrogate,
it is the duty of the complainants, when required, to file a written allega-
tion or libel stating the substance of their claims against the defendants.

The defendants may call on the surrogate to reject the allegation for insuffi-
ciency, or they may take issue upon the facts propounded, or put in a
counter allegation in the nature of a plea in bar.

The surrogate before whom the will was proved, or by whom administration
was granted, has power upon the application of the legatees or next of
kin, to compel executors as well as administrators to account and to dis-
tribute the personal estate according to law or the directions of the tes-
tator.[1]

No surrogate can call executors or administrators to account, except where
probate of the will or letters of administration were granted by him.

Whether a surrogate can compel an account from the personal representa-
tives of a deceased executor or administrator, although probate or admin-
istration of both estates were granted by him, unless some portion of the
first estate actually came to the hands of such representatives ? *Quære.*

Where, to determine the liability of parties, it is necessary to require the ac-
counts of several estates, it would seem that the Court of Chancery alone
has jurisdiction.

ABOUT twenty years since, John Wilber, of the county *August 4th.*
of Otsego, made his will, and appointed his son John, and
A. Olmstead, D. Fuller and T. Murphy his executors. The
testator died soon after, and the will was proved by the ex-
ecutors *before the surrogate of Otsego. Fuller died in        [*538]
1815, intestate, and his widow administered on his estate.
Murphy resided in the county of Schoharie, and the only
part of the estate which ever came to his hands, was a debt
due from D. Olmstead; which he paid over to his co-ex-
ecutors, in 1813, and took their receipt for the same in full.

[1] 2 R. S. (4th ed.) 277, sec. 57; see also *Dakin* v. *Demming,* 6 Paige, 95;
*Stagg* v. *Jackson,* 1 Comst. 206; *Westervelt* v. *Greeg,* 1 Barb. Ch. 469; *Grat-
acap* v. *Phyfe,* id. 485; *Stagg* v. *Jackson,* 2 id. 87; *Smith* v. *Van Kuren,* id.
473, 475.

Murphy died in Schoharie in 1817, and the appellants, his executors, proved his will before the surrogate of that county. In 1827, N. Wilber, one of the sons of John Wilber, and D. Olmstead, the assignee of another son, cited the surviving executors of John Wilber, the administratrix of Fuller, and the executors of Murphy, to appear before the surrogate of Otsego County to render an account of the execution of the will of John Wilber. The citation was served on one of the appellants only. When he appeared before the surrogate he objected to any further proceedings in the matter until his co-executor was cited. But the objection was overruled. Various other objections were also taken by the appellant who was cited. In December, 1827, the surrogate pronounced final sentence in the cause; by which, among other things, he declared and decreed that J. Wilber, Jr., one of the surviving executors of his father, the administratrix of Fuller, and the executors of Murphy were to be charged with the sum of $831 91, with interest thereon from the first of July, 1811; that being the amount of the Olmstead debt, received by Murphy, and paid by him over to his co-executors. And the surrogate ordered the defendants to pay over one-fourth of that amount, including interest, being $445 76, to D. Olmstead as the assignee of G. Wilber; and also to pay into court $62 10, on account of the costs of the suit. From this sentence and decree of the surrogate the executors of Murphy appealed to this court.

*J. I. Danforth* and *A. Van Vechten*, for appellants:—The decree of the surrogate is erroneous and ought to be reversed. Both the executors of Murphy should have been cited before the surrogate; and also the residuary legatees of John Wilber. There were no pleadings before the surrogate. The complainants should have filed a written allegation of their claim against the defendants. The executors of Murphy *are not liable for the money received by their testator as executor of J. Wilber, and paid over by

[*539]

him to his co-executors. Murphy reposed only a necessary confidence in those persons in whom the testator had placed equal confidence. (*Balchen* v. *Scott*, 2 Ves. jun. 678; *Bacon* v. *Bacon*, 5 Ves. 331.) The executors of Murphy cannot be bound after such a lapse of time to make out a strict discharge as to the moneys received by their testator as the executor of Wilber. There is a distinction between the claims of legatees and creditors upon executors. (*Churchill* v. *Lady Hobson*, 1 Pr. Wms. 242, 243.) The surrogate of Otsego had no jurisdiction over the appellants, they being executors of a will made and proved in Schoharie. A case like this is only cognizable in Chancery. The surrogate had no power to decree the payment of costs to himself. The claim here of one brother is barred by the statute of limitations. (*Kane* v. *Bloodgood*, 7 John. Ch. R. 90.)

*W. A. Seelye*, for respondents:—The appellants are bound to give a legal account of the money received by Murphy their testator. The surrogate of one county has the power to call to account an executor in another county, provided the will is proved before the surrogate directing the account. The payment by Murphy to his co-executors was not a good discharge as to him. (*Mumford* v. *Murray*, 6 John. Ch. R. 1; *Monell* v. *Monell*, 5 John. Ch. R. 283, 294; *Sadler* v. *Hobbs*, 2 Brown's Ch. Cas. 114.) The appellants are liable to the payment of interest. (*Glen* v. *Fisher*, 6 John. Ch. R. 33; *Mumford* v. *Murray*, id. 17; *Green* v. *Winter*, 1 John. Ch. R. 27; *Manning* v. *Manning*, 1 id. 527.) Advantage cannot now be taken of the statute of limitations, as it was not pleaded before the surrogate; and there being a trust in this case prevents the statute operating as a bar. (*Goodrich* v. *Pendleton*, 3 John. Ch. R. 390; *Cooper* v. *Murray*, 5 John. Ch. R. 622; *Kane* v. *Bloodgood*, 7 John. Ch. R. 127; *Hammond* v. *Huntley*, 4 Cowen, 494.)

*THE CHANCELLOR:—On the argument of this cause,                    [*540]

the counsel for the appellants raised a great variety of objections to the proceedings before the surrogate. Some of these objections relate to the formality of the proceedings merely; but many of them go to the jurisdiction of the court, and to the merits of the final sentence and decree pronounced by him. As to matters of form, the whole proceedings appear to have been very loose and irregular. The promoters of the suit were called upon to state the grounds of their claim against the executors of Murphy; but it was not done. It was their duty, when called on for that purpose, to file a written allegation or libel, propounding or stating the substance of their claim against the defendants respectively, and the nature and grounds thereof. If this allegation was insufficient, and showed no grounds for proceeding against the defendants, the court might be called upon to reject it; or they might take issue on the facts propounded; or put in a counter allegation in the nature of a plea in bar. Until some issue was joined in the cause, neither party could be prepared to go into the examination of testimony.

It was objected on the argument that the power of the surrogate to compel an account was confined to administrators, and did not extend to executors. Such undoubtedly was the ecclesiastical law of England at the time of the first settlement of this country, and as such was brought hither by our ancestors. And I have not been able to find that it was altered in this state previous to the revolution. In the case of *Sparrow* v. *Norfolk*, in the 15th year of James the 1st, (Noyes' Rep. 28, Godolph. Eccl. L. 116,) an executor being cited to account before the ordinary, a prohibition was granted, on the ground that the ecclesiastical courts had no jurisdiction in such cases; but it was admitted they had the power to compel such an account by an administrators. That such was the law in England, may also be fairly inferred from the statutes 22 and 23 Charles 2, ch. 10, and 1 James 2, ch. 17. But soon after the revolution provisions were introduced into the statutes

of this state which evidently show an intention on the part of the legislature to extend the power of the Court of Probates so far as to enable them to call *executors to account in certain cases. That power has in a subsequent revision of the statutes been extended to the surrogate who grants probate of the will, or letters of administration on the estate. The first part of the eleventh section of the revised act of the 8th of April, 1813, (1 Rev. Laws, 448,) is undoubtedly taken from the statute 22 and 23 Charles 2, ch. 10, which gives express power to the ecclesiastical courts to call administrators to account. But the latter clause of the section, which authorizes the Court of Probates or surrogate to hear and determine all causes touching any legacy or bequest in any last will or testament, payable or coming out of the personal estate of the testator, and to decree and compel payment thereof, is not found in the British statute. But it was introduced into the revision of our laws in 1787. (2 Jon. & Var. ed. of Laws, 71.) The power to call the executor as well as the administrator to account before the Court of Probates or surrogate, is also recognized in the 3d section of the act of the 6th of April, 1813. (1 Rev. Laws, 311.) This section appears to have been taken from the 6th section of the statute 1 James 2, ch. 17, which extends to administrators only. But in our revision of 1787, it is found, as in the act of 1813, applicable to executors as well as to administrators. The conclusion to which I have arrived on this point is, that in this state, on the application of the legatees or next of kin, the surrogate before whom the will is proved, or by whom administration is granted, may compel the executor or administrator to account, and distribute the personal estate of the testator or intestate, according to law, or agreeably to the terms of the will.

There is, however, a difficulty in this case as to the jurisdiction of the surrogate, which is insurmountable. The appellants were not executors of Wilber, whose legatees were seeking for an account of his estate; neither were they bound to account to the surrogate of Otsego. By

1829.

Foster
v.
Wilber.

the act of the 8th of April, 1813, (1 Rev. Laws, 445,) the
exclusive power to take proof of the will, or grant admin-
istration of the estate, is given to the surrogate of the
county of which the testator or intestate was an inhabitan¹
at the time of his death; *and the ninth section of the
same act authorizes any such surrogate to call the adminis-
trator, &c., to account. It certainly never was the inten·
tion of the legislature to authorize a surrogate to exercise
any control or authority over executors or administrators,
except as to those who had made proof of the will or taken
out administration before him. No such power was ever
exercised by any ecclesiastical court in England; and there
is nothing in our laws conferring any such jurisdiction
here. It is very doubtful whether any surrogate has the
right to compel the representatives of a deceased executor
or administrator to account for the estate which came to
the hands of such executor or administrator, even if pro-
bate or administration as to both estates were granted by
him, unless some portion of the first estate actually came
to the hands of such representatives. (1 Addams' Rep.
153.) In this case, some of the executors of Wilber sur-
vived Murphy; the appellants, therefore, are not the exec-
utors of Wilber, and have nothing to do with his estate.
If their testator had made himself liable by maladministra-
tion, they are liable as debtors to that estate, to the amount
of the assets of Murphy in their hands, to be paid in a due
course of administration. Although Murphy died solvent,
it does not follow that his executors have sufficient assets
in their hands to pay all his debts. This case is a strong
elucidation of the impropriety of giving to the surrogate
such a power. In order to determine the liability of the
several parties cited before the surrogate, and to make a
final settlement of the matter, it would require the ac-
counts of three different estates to be taken. If the appel-
lants are responsible to the heirs of Wilber in any event, it
is clear that they ought not to be compelled to pay until
the remedy of those heirs has been exhausted against the

surviving executor, and the estate of Fuller. · And yet the
decree of the surrogate is joint as well as personal against
the surviving executor of Wilber, the administratrix of
Fuller, and one of the executors of Murphy. It would
seem that in such a case the Court of Chancery alone was
competent to make a decree settling all these conflicting
rights so as to do justice between the parties. It is certain
that in this case the surrogate of Otsego had no jurisdic-
tion *to make this decree against the appellants who had
taken out probate in the county of Schoharie.

In addition to the want of jurisdiction over these appel-
lants and the estate of Murphy, so far as I can understand
this case from the informal proceedings which have been sent
up on this appeal, the decree of the surrogate cannot be
sustained on the merits. By the will of Wilber the Olm-
stead debt was specifically appropriated to pay the demand
due to Peter Smith, and all other debts of the testator; and
the overplus only, if any there should be, was given to the
four eldest sons. As early as 1813, Murphy received the
Olmstead debt, and settled for the same with the acting ex-
ecutors and took their receipt. If either of those executors
or Murphy have paid any debts of the estate, he had a
right to insist that it should be deducted from the moneys
paid over by him. As that was the fund appropriated for
the payment of all the debts, whatever payments have been
made by those who are accountable for that fund must be
deducted; and the executors of Murphy can in no case be
made answerable for any thing more than the surplus. It
appears from the testimony that Murphy settled the Smith
debt. If he settled it out of the proceeds of real estate
when there was a special fund in his hands for the purpose,
he may be liable to the owners of that real estate, and was
entitled to retain an equal amount out of the fund to satisfy
their claim. John Wilber, Jr., who received the money
from Murphy, in 1813, also paid above $250 towards the
debts for which that fund was particularly appropriated.

And yet the appellants are charged with the whole amount of that fund, with interest from 1811.

The sentence and decree of the surrogate so far as it affects the rights of the appellants or either of them must be reversed. It is undoubtedly erroneous as to the administratrix of Fuller; but as she has not appealed, this court can make no order for her relief.